Brassakd, J.
The defendant was indicted in August 1979 for assault and battery by means of a dangerous weapon and armed assault with intent to murder in connection with the shooting of Mr. Michael Renk. The defendant had been arrested on these charges on July 23, 1979 and shortly thereafter was represented by counsel. On the scheduled trial date of September 24, 1980, the defendant failed to appear, was defaulted, and arrested in September 1995 in Arizona on the outstanding 1980 default warrant. In October 1995, the defendant was indicted for two counts of assault by means of a dangerous weapon and four counts of unlawful possession of a firearm. The defendant was also indicted on one count of failure to appear.
The 1979 indictments grow out of a shooting of Mr. Renk which occurred on May 20, 1979 on the Lowell Connector in Chelmsford. Mr. Renk was driving his car at the time he was shot, and his assailant shot him from another car on the highway. Mr. Renk was unable to identify his assailant. The expected evidence against the defendant may be generally summarized as follows: the defendant had had a romantic relationship with his former girlfriend and that relationship ended in late 1978. In 1979, the former girlfriend had a date with Mr. Renk. It is alleged that the defendant stalked his former girlfriend and threatened her. After the shooting on May 20, 1979, the police traced a particular rented vehicle to the defendant. Lieutenant McCusker of the Chelmsford police, then a sergeant, secured the rented vehicle on May 21, 1979. With advice from the FBI, Sergeant McCusker took a number of swabs with cotton from the vehicle. He also took samples from other parts of the vehicle. Further, he removed the headliner from the vehicle. These materials were sent to the FBI, and in mid-July, 1979, the FBI reported back to the Chelmsford police that testing on the various samples revealed the presence of chemicals associated with the discharge of a firearm. After collecting the samples in May 1979, Sergeant McCusker returned the rented car to the lessor on June 1,1979. Afterreceiving the results of the testing from the FBI, the Chelmsford police arrested the defendant on July 23, 1979.
By a report dated July 27, 1979, the FBI states that significant amounts of certain chemicals consistent with the discharge of a firearm were detected on some of the specimens from various surfaces of the suspect vehicle. The report further indicates that these findings are consistent with a firearm having been discharged in or in close proximity to the interior of that vehicle. Finally, the report indicates that the specimens at issue were “consumed during the course of the examination.”
This motion by the defense proceeds on the assumption that the specimens in question were “consumed.” Although this Court recently allowed a motion made by the defendant to conduct forensic testing upon the swabs, that testing has not yet been performed. The defendant maintains that it was not given access to the swab materials until the hearing on this motion, on September 30, 1996.
Evidence at the hearing indicated that most of the cotton material at the tip of each swab was not returned to the Chelmsford police by the FBI. This Court decides this motion on the basis that all of the relevant specimens were consumed during testing by the FBI in 1979.
This motion of the defendant seeks to prohibit expert testimony with respect to the results of the testing by the FBI, and is based upon the concept that the prosecution has lost or destroyed evidence which is potentially exculpatory.
This Court concludes that because the defendant voluntarily absented himself in September 1980 at the time trial was scheduled, the defendant has waived any objection to the anticipated expert testimony. Prior to the time of the defendant’s default, neither the defendant nor his counsel had made any motion objecting to the anticipated expert testimony. Further, prior to the time of the defendant’s default, the defendant had made no request to conduct any testing of any of the material recovered from the vehicle. The defendant simply cannot improve his position by choosing voluntarily to go into default and absent himself from the jurisdiction.
Alternatively, the Court concludes that even if there is not a waiver, the balancing test required by the Supreme Judicial Court in Commonwealth v. Willie, 400 Mass. 427 (1987), is unavailing to the defendant. Employing that balancing test, this Court concludes that the motion to prohibit expert testimony must be denied.
The defendant has the burden of establishing a reasonable possibility, based upon “concrete evidence and not on mere speculation" that the actions of the *672 Commonwealth deprived him of evidence that would have been favorable to his case. Commonwealth v. Mitchell, 38 Mass.App.Ct. 184, 190 (1995), quoting Commonwealth v. Olszewski, 416 Mass. 707, 714 (1993). Although the Court recognizes that it is difficult for the defendant to establish exculpatory evidence when he does not have the opportunity to bring that evidence forward, the fact nevertheless remains that the FBI did conduct tests in 1979 and concluded that those tests demonstrated the presence of chemicals consistent with the discharge of a firearm. While it is of course possible that the FBI did not conduct the tests properly, this Court concludes that the defendant has not demonstrated a reasonably concrete possibility that the evidence would have been exculpatory.
Even if the defendant has demonstrated that the evidence was potentially exculpatory, the balancing test must be employed. As to the culpability of the government, the Court finds that the culpability in this case was non-existent, and at most minimal and inadvertent. Indeed, virtually all of the case law to the effect that the government has a duty to preserve and disclose potentially exculpatory evidence did not arise until after the defendant defaulted in 1980.
Assuming that the lost or consumed evidence was potentially exculpatory, the evidence would have been material and its loss prejudicial. The complaining witness is unable to identify the defendant as his assailant. It is, therefore, critical that the government establish that the vehicle in question was under the control of the defendant and that a firearm was discharged in that vehicle. The prejudice to the defendant in this case is mitigated not only by the fact that the defendant may cross-examine the government expert who did the testing, but also by the fact that the headliner from the vehicle has been retained and is available to the defendant.
This Court concludes that under all of the circumstances, and in particular the fact that the defendant defaulted in 1980, the motion to prohibit expert testimony must be DENIED.